FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. JAYDE DILLON EVANS, AKA Jayde D. Evans; BRICE CHRISTIAN DAVIS, AKA Brice C. Davis, *Defendants-Appellants.* | No. 17-30185 D.C. Nos. 2:12-cr-00016-WFN-6 2:12-cr-00016-WFN-5 OPINION |

Appeal from the United States District Court
for the Eastern District of Washington
Wm. Fremming Nielsen, District Judge, Presiding

Argued and Submitted March 27, 2019
San Francisco, California

Filed July 9, 2019

Before: Diarmuid F. O'Scannlain, Carlos T. Bea,
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge O'Scannlain

## SUMMARY[*]

### Criminal Law

The panel affirmed the district court's judgment on remand denying a motion by two medical marijuana growers to enjoin their federal prosecutions for violations of the Controlled Substances Act.

In the prior appeal, the panel held that a congressional appropriations rider prohibited the Department of Justice from spending appropriated funds to prosecute individuals who engaged in conduct permitted by state medical marijuana laws; and remanded to the district court with instructions to hold an evidentiary hearing to determine whether the defendants' conduct was completely authorized by state law. On remand, the district court found that the defendants were not in strict compliance with Washington's Medical Use of Cannabis Act (MUCA).

In this appeal, the panel held that because the appropriations rider authorizes the defendants to seek to enjoin prosecution, the defendants – not the Government – bear the burden of proof regarding whether the state's medical-marijuana laws completely authorized the defendants' conduct.

Explaining that this court looks to the state law's substantive authorizations but not to the state's procedural rules that give practical effect to its medical-marijuana regime, the panel rejected the defendants' contention that the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Government must procure a jury verdict of noncompliance in Washington State Court before it can prosecute them for their federal crimes.

The panel held that the district court correctly refused to allow the defendants to assert "common law affirmative defenses," and correctly focused on the defendants' compliance with MUCA itself.

Affirming the district court's factual finding that the defendants did not strictly comply with MUCA, the panel held that the district court did not clearly err in finding that the defendants, neither of whom claimed to be a "designated provider," were likewise not "qualified patients."

## COUNSEL

Nicolas V. Vieth (argued), Vieth Law Offices, Chtd., Coeur d'Alene, Idaho; David M. Miller (argued), Miller & Prothero, Spokane, Washington; for Defendants-Appellants.

Timothy J. Ohms (argued), Assistant United States Attorney; Joseph H. Harrington, United States Attorney; United States Attorney's Office, Spokane, Washington; for Plaintiff-Appellee.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide, once again, whether marijuana growers may enjoin federal prosecution in a state which has legalized medical use.

I

A

In 2011, a group of friends decided to grow and to sell medical marijuana. Tyler McKinley, Samuel Doyle, and Jared Kynaston identified a suitable residential property in Spokane County, Washington. McKinley signed the lease and the power bill, and Doyle and Kynaston moved into the residence to manage the grow. Doyle "definitely . . . was the one in charge," as a former employee later testified, while Kynaston was "the smart one on growing pot plants [who] knew all the chemistry stuff and everything like that."

Soon enough, Doyle and Kynaston needed help bringing the crop to market, so they hired Jayde Evans and Brice Davis—the defendants-appellants in this case—to work as "trimmers." Evans and Davis would wait for Kynaston to harvest a marijuana plant, then "[s]it there on the couch and trim the leaves off." While the trimmers worked, Kynaston would set consumable marijuana on the table, and if "[they] wanted to smoke, [they] would smoke."

In November 2011, the burgeoning enterprise ended abruptly when federal and state law enforcement officers raided the grow. Officers found 562 marijuana plants growing in a greenhouse, the garage, and the residence itself. Federal prosecutors soon indicted Evans, Davis, Kynaston,

UNITED STATES V. EVANS 5

Doyle, McKinley, and two other trimmers in the Eastern District of Washington for various violations of the Controlled Substances Act ("CSA"). *See* 21 U.S.C. § 821 *et seq.*

B

In 2014, McKinley filed a motion (which Evans and Davis, among other defendants, joined) seeking an "order dismissing the indictment and/or enjoining the Government from taking any further action of any kind in the prosecution of this case." They claimed that Congress enacted an appropriations rider that forbade the Department of Justice ("DOJ") from spending money to prosecute them. Section 538 of the statute reads as follows:

> None of the funds made available in this Act to the Department of Justice may be used, with respect to [several states, including Washington], to prevent such States from implementing their own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana.

Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235, § 538, 128 Stat. 2130, 2217.[1] The movants argued that, because the State of Washington legalized the medical use of marijuana, § 538 prohibited DOJ from using appropriated funds to prosecute them. The district court denied the motion, and the movants appealed

---

[1] Congress has reenacted the same provision each year since. *See, e.g.*, Consolidated Appropriations Act, 2019, Pub. L. No. 116-6, § 537, 133 Stat. 13, 138. Because the language in each is materially the same, we simply refer to the provision as "§ 538" or "the appropriations rider."

the interlocutory order. We then consolidated such appeal with several similar ones arising contemporaneously out of the Northern and Eastern Districts of California. *See United States v. McIntosh*, 833 F.3d 1163, 1168–69 & n.1 (9th Cir. 2016).

In *McIntosh*, which disposed of all the consolidated appeals, we vacated the district court's injunction denial order in this case. *Id.* at 1180. If Congress "expressly prohibits DOJ from spending funds on certain actions," we reasoned, then "federal criminal defendants may seek to enjoin the expenditure of those funds." *Id.* at 1173. Interpreting § 538's text,[2] we concluded that DOJ could not spend appropriated funds to prosecute "individuals who engaged in conduct permitted by the State Medical Marijuana Laws." *Id.* at 1177. Nevertheless, because prosecution of *non*-compliant defendants "does not prevent the implementation" of such laws, *id.* at 1178, we stressed that defendants would not be able to enjoin their prosecutions unless they "*strictly complied* with all relevant conditions imposed by state law on the use, distribution, possession, and cultivation of medical marijuana," *id.* at 1179 (emphasis added). Accordingly, we remanded to the district court with instructions to hold an "evidentiary hearing[] to determine whether [the movants'] conduct was completely authorized by state law." *Id.*

---

[2] In *McIntosh*, we referred to the rider as § 542, but because the rider's text has remained materially the same since that time, our holdings remain unchanged.

C

On remand, the district court held a two-day hearing to determine whether Evans and Davis complied with Washington's Medical Use of Cannabis Act ("MUCA").[3] *See* Wash. Rev. Code § 69.51A (2013). Although MUCA "does not decriminalize the medical use of cannabis," it does offer an "affirmative defense" to "qualifying patients and designated providers." *State v. Reis*, 351 P.3d 127, 134 (Wash. 2015); *see also* Wash. Rev. Code § 69.51A.043 (2013) (establishing the defense). Relevant here, a defendant asserting such defense must show (1) that he was either a "designated provider" or a "qualifying patient," *see id.* § 69.51A.010 (2013), and (2) that he possessed no more marijuana than authorized, *see id.* § 69.51A.040 (2013).

The district court placed the burden of proof on the defendants to prove strict compliance with MUCA by a preponderance of the evidence. Because Evans and Davis exercised no "supervisory powers over the grow," the district court focused on "each individual [d]efendant's compliance with state law." The court found that the two smoked marijuana while trimming, but that each failed to demonstrate that he was a "qualifying patient." Accordingly, because Evans and Davis were "not in strict compliance" with MUCA, the district court again denied the motion to enjoin the prosecutions. For a second time, Evans and Davis appeal to this court.

---

[3] The district court also considered McKinley's compliance with MUCA, but McKinley did not appeal the district court's order. All of the original defendants in this case, except for Evans and Davis, have pleaded guilty.

II

A

Evans and Davis initially argue that the district court erred because the Government—not the defendants—should bear the burden of proof in such hearings. In their view, because "having the funds to prosecute an offense is a condition precedent to a continued prosecution," the Government "bears the burden to show that the Defendants' actions did not" comply with MUCA.

Nothing in § 538's text expressly compels a particular burden of proof in such cases or explains who bears that burden, but *McIntosh* itself defeats Evans and Davis's theory. There, we stated that § 538 authorizes defendants to "seek to enjoin" the DOJ's use of funds to prosecute those who comply with state medical-marijuana laws. *McIntosh*, 833 F.3d at 1173. Generally, the party seeking an injunction bears the burden of showing that he is entitled to such a remedy. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). In this case, then, the burden falls on Evans and Davis because they seek to enjoin the Government's prosecution.

We see no good reason to depart from such baseline rule. First, the appropriations rider does not amend the CSA to impose a new *element* for federal marijuana crimes. *See McIntosh*, 833 F.3d at 1179 n.5; *see also United States v. Nixon*, 839 F.3d 885, 887–88 (9th Cir. 2016) (rejecting the argument that the "appropriations rider suspended the Controlled Substances Act"). Thus, the Government need not prove Evans's and Davis's non-compliance with state law beyond a reasonable doubt in order to convict them. *See Gilmore v. Taylor*, 508 U.S. 333, 359 (1993). Second, although the Supreme Court has said that different standards

of proof sometimes apply where "particularly important individual interests or rights are at stake," *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389 (1983), the appropriations rider does not itself exist to protect such interests. Instead, § 538 prohibits prosecution of individuals only *incidentally*—because such prosecutions "prevent[] the state from giving practical effect to its law providing for non-prosecution of individuals who engage in the permitted conduct." *McIntosh*, 833 F.3d at 1177. Thus, the defendants' liberty interests do not counsel in favor of placing the burden on the Government.

In sum, because § 538 authorizes Evans and Davis to seek to enjoin prosecution, they bear the burden of showing that they are entitled to such an injunction by persuading the court that it is more likely than not that the state's medical-marijuana laws "completely authorized" their conduct. The district court did not err in placing the burden on them.

B

Evans and Davis next argue that the Government must procure a "jury verdict of noncompliance" in Washington State Court before it can prosecute them for their federal crimes. Because MUCA entitles them to "a jury determination as to whether they complied with the State's medical-marijuana laws," they argue, federal prosecutors must obtain the same.

*McIntosh* again forecloses such argument. The appellants there argued that § 538 forbade DOJ from prosecuting anyone in a state that legalized medical marijuana. Importantly, the defendants claimed that § 538's reference to a state's "implementation" of medical-marijuana laws "necessarily involve[d] all aspects of putting the law into practical effect, including . . . *procedures and*

*processes for determining the outcome of individual cases.*" *McIntosh*, 833 F.3d at 1177 (emphasis added). Rejecting such argument, we concluded that § 538 referenced only "those *specific* rules of state law that *authorize* the use, distribution, possession, or cultivation of medical marijuana." *Id.* at 1178 (emphasis added). Thus, we look to the state law's *substantive* authorizations, not to the *procedural rules* that give practical effect to the state's medical-marijuana regime. In other words, we ask whether the defendant has fully complied with the laws that allow the use, distribution, possession, or cultivation of medical marijuana, not whether he would be entitled to some procedure if the state, rather than the federal government, were prosecuting him in its courts. We are satisfied that Washington's procedural rules—including its jury rules—should not be imported into § 538.

C

Evans and Davis further argue that the district court erred because it refused to allow them to assert "common law affirmative defenses" to show that the Government may not prosecute them for violating the CSA. But *McIntosh* held that § 538 prohibits DOJ from prosecuting those who "strictly comply" with those "*specific* rules of state law that *authorize*" medical marijuana. *Id.* (emphasis added). Thus, the question under § 538 is whether the defendant's conduct is "completely authorized" by the state's laws authorizing the use, distribution, possession, or cultivation of marijuana—in this case, MUCA. *Id.* at 1179. The defenses that Evans and Davis wish to assert (*e.g.*, "entrapment by estoppel" and "reliance upon advice of counsel") do not arise from MUCA itself, nor do they bear on whether Washington expressly authorized the use of medical marijuana. Evans and Davis may not resort to such common-law defenses to

show that MUCA authorizes their conduct, and the district court correctly focused on their compliance with MUCA itself.

III

Finally, Evans and Davis challenge the district court's factual finding that they did not "strictly comply" with MUCA. Although we review a district court's interpretation of state law de novo, *Garmon v. County of Los Angeles*, 828 F.3d 837, 842 (9th Cir. 2016), when the district court's determination turns upon factual findings, we review for clear error, *United States v. Kent*, 649 F.3d 906, 912 (9th Cir. 2011).

Under MUCA, one who uses or possesses marijuana must show that he is either a "qualifying patient" or a "designated provider" to assert the affirmative defense. Wash. Rev. Code § 69.51A.043 (2013). Both defendants used marijuana from the grow while trimming, and neither claims to be a "designated provider." Accordingly, each must rely on proving that he is a "qualifying patient." Simplifying MUCA's definition somewhat, a qualifying patient is one who has been diagnosed with a "terminal or debilitating medical condition," informed by a "health care professional about the risks and benefits of the medical use of marijuana," and "advised by that health care professional that [the person] may benefit from the medical use of marijuana." Wash. Rev. Code § 69.51A.010(4) (2013).

The district court found that Evans and Davis were not qualifying patients, and we agree. During the hearing, neither defendant introduced a "green card" (*i.e.*, a card indicating that a doctor recommended marijuana usage), and neither called a physician witness to testify to prescribing marijuana to Evans or Davis. Although Evans claimed that

| 12 | UNITED STATES V. EVANS |
|---|---|

he had a "marijuana authorization card" that was "signed by a doctor," he did not produce such card until after the district court had conducted its hearing. In any event, Evans also admitted that his prescription for medical marijuana was for "anxiety," which is not a "[t]erminal or debilitating medical condition" under MUCA. *Id.* § 69.51A.010(6) (2013); *see also State v. Fry*, 228 P.3d 1, 7 (Wash. 2010) (lead opinion) (stating that "anxiety" is not a "debilitating medical condition"). The district court did not clearly err in finding that Evans and Davis were not "qualifying patients." *See United States v. McTiernan*, 695 F.3d 882, 887 (9th Cir. 2012).

IV

The judgment of the district court is **AFFIRMED.**